Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| SAZÓN JG LLC<br><br>Demandante - Apelante<br><br>v.<br><br>IHP PUERTO RICAN OWNER, LLC; PG-IHP, LLC; COMPAÑÍAS DE SEGURO A, B, C; Y PERSONAS DESCONOCIDAS X, Y, Z<br><br>Demandados - Apelados | KLAN202200884 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2022CV04751 (904)<br><br>Sobre:<br>Violación de Derechos Marcarios; Interdicto Preliminar; Interdicto Permanente; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

El Tribunal de Primera Instancia (el TPI), luego de un juicio, desestimó una acción relacionada con el uso de la palabra "sazón" por varios restaurantes en Puerto Rico. Según se explica en detalle a continuación, concluimos que procede confirmar la sentencia apelada, pues no se demostró que exista la probabilidad de confusión que afectaría el uso de la marca por la parte demandante.

I.

En junio de 2022, Sazón JG, LLC (el "Negocio de Ponce") presentó la acción de referencia, sobre infracción de derechos marcarios, interdicto preliminar y permanente, y daños (la "Demanda"), en contra de IHP Puerto Rican Owner, LLC y PG-IHP, LLC (las "Corporaciones de San Juan"). El Negocio de Ponce alegó que era dueño de la marca "sazón" y que, desde el 2013, comercializó, publicitó y promovió dicha marca en conexión con los servicios de sus restaurantes. Afirmó que, por su esfuerzo, la referida marca distintiva adquirió un valor considerable y

reconocimiento entre el público consumidor, quien la identifica con la fuente de sus servicios. Además, señaló que la marca fue registrada en el Registro de Marcas y Nombres Comerciales de Puerto Rico (el "Registro de Marcas") y tiene el número de registro 226304.

Se alegó que las Corporaciones de San Juan recientemente habían establecido y operaban un restaurante promocionado con una designación "confusamente similar" a su marca "sazón" (el "Negocio de San Juan").[1] El Negocio de Ponce planteó que esto provocó confusión en el público consumidor. Sostuvo que las acciones de las Corporaciones de San Juan, quienes conocían la existencia de su marca, le ocasionaron una alta probabilidad de pérdida del control sobre esta y de su reputación, lo cual se catalogó como un daño irreparable.

El Negocio de Ponce solicitó que el TPI acogiera la *Demanda* y emitiera un interdicto (*injunction*) provisional y permanente para evitar los daños irreparables ocasionados por la confusión creada por el uso de una marca similar por las Corporaciones de San Juan. El Negocio de Ponce acompañó la Demanda con una *Solicitud de Orden Provisional Ex Parte,* con el fin de que se ordenase a las Corporaciones de San Juan cesar y desistir del uso de la marca "Sazón" u otra "confusamente similar".

El 10 de junio, el TPI denegó la solicitud de orden provisional; razonó que no procedía el remedio solicitado porque las Corporaciones de San Juan tenían un certificado de registro de marca que se presumía valido, mientras no fuera cancelado.

El 27 de junio, las Corporaciones de San Juan presentaron un escrito en oposición a que se emitiera un interdicto preliminar. De entrada, señalaron que el Negocio de Ponce había registrado la

---

[1] Véase, *Demanda*, Apéndice 1, pág. 1.

marca "sazón" luego de la fecha en que las Corporaciones de San Juan registraron la marca a su favor. No cuestionaron que el Negocio de Ponce en efecto utilizaba la palabra "sazón", combinada con otras palabras o frases, como nombre de sus restaurantes ubicados en Ponce, ello desde antes de que el Negocio de San Juan abriera.

No obstante, las Corporaciones de San Juan afirmaron que, en el mercado de Puerto Rico, las marcas pueden coexistir siempre que no exista probabilidad de confusión. Adujeron que, en este caso, no había probabilidad de confusión debido a que las marcas se utilizan significativamente de modo diferente y a que la palabra "sazón" se usa ampliamente en la industria de restaurantes, lo cual implica que es una marca débil. Expusieron que el uso proliferado de una marca reduce marcadamente las probabilidades de que un consumidor la asocie con una sola fuente. *Posadas de Puerto Rico Associates Inc. v. Sands Hotel & Casino, Inc.*, 131 DPR 21, 42 (1992).

Arguyeron que, como la palabra "sazón" era una marca débil en este contexto, esta era incapaz de apuntar a un origen, fuente o dueño particular en la mente de un consumidor prudente y razonable. Ante la ausencia de probabilidad de confusión entre las marcas de las partes, afirmaron que el Negocio de Ponce no había sufrido daños y, por ende, no había demostrado una probabilidad de prevalecer en los méritos, por lo cual procedía denegar la solicitud de *injunction.*

Las Corporaciones de San Juan también aseveraron que, cuando realizaron una investigación en el Registro de Marcas, la marca "SAZÓN" estaba disponible en el renglón de Clase Internacional 43, para servicios de restaurante y barra. Asimismo, afirmaron desconocer la existencia del Negocio de Ponce hasta que recibieron una carta de cese y desista cursada por este. Por lo cual, sostuvieron que obraron de buena fe al inscribir su marca.

Añadieron que su intención no era monopolizar el mercado, ni perjudicar el Negocio de Ponce, sino coexistir.

Las Corporaciones de San Juan resaltaron que, en el mercado de Puerto Rico, la palabra "sazón" también es utilizada por numerosos restaurantes, cafeterías, fondas y restaurantes de comida rápida para identificar los productos y servicios que ofrecen.

Luego de varios trámites procesales, el TPI celebró la vista sobre *injunction* provisional los días 29 y 30 de junio y 1 de julio. Luego, las partes presentaron memorandos.

El 27 de septiembre, el TPI emitió una *Sentencia* mediante la cual desestimó la *Demanda* tras concluir que no existía probabilidad de confusión. El TPI formuló las siguientes determinaciones de hechos:

1. La demandante, Sazón JG, LLC, es una corporación debidamente inscrita y organizada conforme a las leyes del Estado Libre Asociado de Puerto Rico, con número de registro 413680 y ubicada en la Urb. Bosque Señorial en Ponce, Puerto Rico.

2. Es la propietaria de tres (3) establecimientos comerciales tipo restaurante, que se dedican a la venta de comida y bebidas. Uno de los negocios con área de comedor al aire libre. Todos ubicados en Ponce, Puerto Rico. Estos se identifican con los nombres "Sazón", "Sazón Criollo Taquería" y "La Fonda del Sazón".

3. El primer restaurante abrió en el año 2013, y desde entonces ha utilizado la palabra Sazón como marca para su identificación en el mercado. La marca "Sazón" se ha comercializado, publicitado y promovido de manera continua, activa y consistente desde el año 2013 en conexión con servicios de restaurante.

4. Los codemandados, IHP Puerto Rico Owners, LLC y PHP-IHP, LLC, son compañías con fines de lucro debidamente organizadas conforme a las leyes del Estado Libre Asociado de Puerto Rico.

5. Estos son los dueños del restaurante Sazón Cocina Criolla, el cual se encuentra ubicado en el Distrito T-Mobile en San Juan.

6. Durante el año 2019, los Demandados iniciaron gestiones investigativas para utilizar la marca de "Sazón". Llevaron a cabo una búsqueda ante el Registro de Marcas del Departamento de Estado encontrando (sic) que no aparecía registrada la marca. Adicionalmente, al hacer una búsqueda a través de la

aplicación *Google Maps* se percataron de que existen alrededor de 19 restaurantes utilizando en su nombre la palabra Sazón.

7. En Puerto Rico existen al menos 19 restaurantes los cuales se identifican con el nombre "Sazón".  Entre estos se encuentran, *El Sazón de Sylvia, El Sazón de Beny, Sabor y Sazón, Viandas con Sazón, Sazón D'Madre, Sazón Mío, Sazón de Tío, El Sazón de Tita, La Sazón de Abuela, Pal-Sazón, Sazón Boricua, Sazón Alvarado, Sazón Criollo, Sazón Isleño*, entre otros.

8. El 17 de diciembre de 2019, IHP solicitó y obtuvo el registro de la marca de palabra SAZÓN en la Clase Internacional 43, para servicios de restaurante y barra, ante el MPR, Núm. de registro 22575.

9. El 11 de marzo de 2021, la Demandante solicitó y, eventualmente, obtuvo el registro de la marca de palabra "SAZÓN" en la clase 43 para servicios de restaurante y barra ante el Registro de Marcas, Núm. de Registro 226304.

10. El 19 de abril de 2021, IHP comenzó a utilizar la marca en el comercio al abrir su restaurante Sazón Cocina Criolla en el Distrito T-Mobile para actividades de "soft opening" y "friends and family" en preparación para su inauguración en mayo de 2021.

12. En preparación para la inauguración del restaurante, IHP emitió comunicados de prensa y publicó artículos en medios de prensa tanto impresos como digitales.

13. En mayo de 2021, los Demandados recibieron una carta de cese y desista por el uso del nombre o la palabra "Sazón" por parte de los demandantes.  Es en este momento en el cual los Demandados se enteraron de que la Demandante tenía algún derecho sobre la marca "Sazón".

14. Sazón Cocina Criolla empezó a operar el 21 de abril de 2021, abriendo formalmente en mayo del mismo año.  La marca la promueven como Sazón Cocina Criolla.

15. La oferta culinaria que ofrece los restaurantes Sazón de la parte demandante no es idéntica o similar entre sí.  El menú varía de acuerdo con el concepto de cada restaurante.

16. La Fonda by Sazón ofrece un menú diario y a la carta. Es uno económico ($8.00 el plato), el cual incluye solo 4 opciones en las proteínas e incluye dos acompañantes entre siete alternativas.

17. Sazón ofrece un extenso menú el cual incluye 19 aperitivos, amplia selección de hamburguesas de pollo, mofongos rellenos de 8 alternativas distintas, además de otros platos como, pechuga a la plancha, pastas y ensaladas.  Los precios fluctúan entre 11 a 20 dólares.

18. Sazón Criollo Taquería mantiene un menú de 15 opciones todas relacionadas a la cocina estilo Tex-Mex con diversos estilos de tacos de carne, pollo, pescado y camarones y ensalada. Los precios fluctúan entre 9 a 12 dólares.

19. La decoración de los restaurantes Sazón de la parte demandante mantiene una similitud de sencillez, con mesas descubiertas y sillas multicolores de plástico. Sin embargo, al igual que el menú, la decoración no es similar entre sí. Los elementos decorativos van acorde al tema u objetivo principal del establecimiento. En la Fonda by Sazón el techo es plano, empañetado de color blanco con lámparas colgantes multicolor. Otro tiene el techo cubierto con plafón acústico, con las paredes decoradas de un collage de lo que aparenta ser páginas de revistas. La loza del suelo no mantiene similitud pues se trata de dos estilos y tamaños unidos por un elemento de metal que abre hacia otro salón decorado de manera distinta. En cambio, la decoración que exhibe Sazón Criollo Taquería es un estilo industrial con lo que aparenta ser los conductos de aire acondicionado expuestos. El techo es alto pintado de color negro del cual cuelgan con cadenas unos cuadros de madera para sujetas pequeñas lámparas o bombillas y alguna vegetación artificial. Las sillas son de plástico color amarillo y rosado sobre un piso en cemento pulido y brillado. Exhibe varios elementos decorativos mejicanos. Sobre el dintel de la puerta de la entrada principal al local se anuncian las palabras CRIOLLO/TAQUERÍA/BAR. De igual manera, en los cristales de la fachada frontal, aparecen las mismas palabras al lado el símbolo del pimiento morrón en las puertas de entrada.

20. Los comensales que visitan consuetudinariamente estos restaurantes son personas que residen en los alrededores y pueblos limítrofes de los restaurantes.

21. La distancia entre los restaurantes de la parte demandante y el restaurante Sazón Cocina Criolla, de la demandada, es de 68.7 millas, la que confirme a la aplicación *Google Maps* se recorre en 1 hora 24 minutos.

22. El concepto del restaurante Sazón Cocina Criolla, de los Demandados, es uno de comida criolla con énfasis en mariscos. Con excepción de las carnes que ofrece el menú, el resto de los platos están combinados con algún marisco. Los precios fluctúan entre $15.91 a $32.95. El salón tiene un techo alto con tubería y conductos de aire acondicionado expuesto, todo cubierto de una pintura gris. Las mesas y sillas guardan uniformidad. Son en madera con el color natural marón y cojín verde. Las paredes están revestidas de color crema y algunas áreas con lozas rectangulares, estilo ladrillo color azul combinando con otras áreas similares. Predominan los colores crema, azul y anaranjado en un pequeño espacio de fondo. Los clientes que auspician el lugar mayormente son

turistas, huéspedes de los hoteles circundantes y locales que visitan el Distrito T-Mobile.

23. En el caso de Sazón Cocina Criolla, en el logo se utilizan 5 colores distintos para cada letra SAZÓN. La letra "O" es un sartén con el mango hacia arriba para formar el acento de la palabra. Dentro del sartén se encuentra la silueta de un pescado, haciendo alusión al énfasis en mariscos en la oferta gastronómica.

24. El logo tipo de la marca Sazón que utiliza la Demandante son varios estilos. En uno de ellos se observa la palabra "Sazón" en color negro, encima de un pimiento morrón grande de color verde. Otro de los logotipos utiliza la palabra Sazón en color blanco en sus letras, a excepción de la letra "ó" que está formada por un pimiento morrón de color verde cuyo tallo funge como acento.

25. El Sr. Carlos Miranda Bach es agente de seguros que reside en Ponce. Conoce a la Demandante desde hace 4 o 5 años. Acude con frecuencia al restaurante Sazón de la carretera #14 en Ponce. En diciembre de 2021, visitó el restaurante de Sazón Cocina Criolla de los Demandados mientras se hospedada en el Hotel Aloft, en el Boulevard Centro de Convenciones, al lado del Distrito T-Mobile. Expresó que entró al establecimiento porque lo relacionó con el restaurante de Ponce. No conoce de ninguna otra persona que por confusión haya entrado a dicho establecimiento. Desconoce sobre la existencia de los restaurantes Sazón Monte Plaza, Sazón Taquería ni La Fonda by Sazón.

26. Los esfuerzos de expansión geográfica de la Demandante, mediante la apertura de restaurantes fuera del Municipio de Ponce, ocurrieron después de la presentación de la solicitud de registro por parte de los Demandantes y de que ésta comenzara a usar la marca "Sazón" en el comercio.[2]

De conformidad con las anteriores determinaciones de hechos, y en lo pertinente, el TPI concluyó en la Sentencia que:

En primer lugar, nos parece importante establecer que la marca que reclaman los Demandantes, la palabra "sazón" es una marca muy débil en nuestro mercado. Además de entender que estamos ante una marca meramente descriptiva, estamos ante una palabra que en español puertorriqueño es extremadamente común. La palabra "sazón" se utiliza por miles de personas en el día a día. Dentro del mercado de los alimentos, la palabra sazón es aún más conocida y utilizada. Esto se demuestra por el hecho establecido por la prueba de que, de una búsqueda somera que llevaron a cabo los Demandados en la plataforma *Google Maps* surgieron 19 restaurantes que utilizan el término "sazón" en sus nombres. A esto se le añade que la parte Demandante promociona sus negocios con la palabra "sazón" y otras

---

[2] Véase, *Sentencia*, Apéndice 19, págs. 271-274.

palabras adicionales para diferencias entre los diferentes negocios y sus estilos. Aunque la Demandante alegó que solo utiliza estos nombres en términos de mercadear los restaurantes en las redes sociales, la realidad es que los restaurantes son diferentes en cuanto a su ofrecimiento, por lo que si una persona entra al restaurante "Sazón" y lo que encuentra es comida mexicana, les causaría confusión pues no podrían diferenciarlo del otro restaurante de comida criolla. Por lo tanto, las palabras adicionales que utiliza la Demandante en sus restaurantes son esenciales para poder correr sus negocios. Por su parte, desde que se registró el término en el Registro de Marcas, los Demandados han utilizado las palabras "Cocina Criolla" en conjunto con la palabra "Sazón". Esto disminuye las probabilidades de que se cree confusión en el mercado. […]

En cuanto a las similitudes en cuanto a la marca, se ha demostrado que ambas partes usan la palabra "sazón" para sus restaurantes. En cuanto a la Demandante, ésta la utiliza para sus distintos restaurantes y en distintas maneras. Al analizar las similitudes en cuanto a los ofrecimientos, debemos concluir que, aunque ambos son similares en cuanto a que se dedican al servicio de comida criolla y tienen platos que son comunes en los restaurantes de comida criolla, ahí se detienen las similitudes. El restaurante de los Demandados está diseñado con un énfasis hacia los mariscos y los precios entre ambos son distintos.

Por todo lo anterior, debemos concluir que no existe una probabilidad de confusión entre las dos marcas. Debemos enfatizar que la marca que reclama la Demandante es extremadamente débil, por lo que entendemos que los cambios a los nombres de los restaurantes que han hecho la Demandante y los Demandados son suficientes para distinguir ambas. En adición a esto, entendemos que ambos pueden coexistir en Puerto Rico, al igual que los demás 16 restaurantes que incluyen la palabra "sazón" en sus nombres.

Ahora bien, aun si entendiéramos que existe la probabilidad de confusión, la Demandante en este caso no cumple con el último requisito que ha establecido la jurisprudencia para estos casos: que dicha probabilidad de confusión le causa un daño irreparable para el cual no posee otro remedio adecuado en ley. Al analizar las alegaciones de la demanda, se puede observar que esta no contiene hechos específicos sobre los daños que ha sufrido la Demandante. Adicionalmente, durante el desfile de prueba, solo se estableció que la Demandante tenía miedo de perder el control sobre su marca y su reputación. A pesar de esto, no estableció hechos específicos en los cuales la actuación de los Demandados ha causado daños a su reputación o a su marca. Los que estableció el testimonio de la Sra. Gina del Prado es meramente especulativo y carece de hechos

concretos que establezcan el daño irreparable que se reclama.[3]

Inconforme con el resultado, el 10 de octubre, el Negocio de Ponce instó una *Solicitud de Reconsideración*. Mediante una Resolución notificada el 11 de octubre, el TPI denegó la misma.

El 9 de noviembre, el Negocio de Ponce presentó el recurso que nos ocupa, junto a una transcripción de las vistas evidenciarias; formula los siguientes señalamientos de error:

A. Erró el TPI en su análisis sobre lo que constituye un daño irreparable en el contexto de derecho marcario.

B. Erró el TPI en su análisis sobre el alcance de una marca para servicios de restaurante.

C. Erró el TPI al hacer un análisis de distintividad de una marca registrada y determinar que es descriptiva.

D. Erró el TPI en su análisis de probabilidad de confusión e ignorar el testimonio de confusión real y las admisiones explícitas de las apeladas.

El 9 de diciembre, las Corporaciones de San Juan presentaron un alegato en oposición al recurso. Resolvemos.

II.

La Ley 169-2009, conocida como Ley de Marcas del Gobierno de Puerto Rico, 10 LPRA sec. 223 *et seq.* (la "Ley 169"), es la legislación rectora del derecho marcario en nuestra jurisdicción.[4] Primordialmente, el derecho marcario pretende "evitar la confusión entre el público consumidor sobre el origen del producto o servicio que la marca identifica al promulgar la correcta identificación de la fuente de éstos". *Bedrosian Heres v. Nestlé Purina Petcare*, 205 DPR 1117, 1130 (2020). Por otro lado, procura "resguardar la reputación, plusvalía, así como la calidad que la marca haya desarrollado". *Íd* (citando *Arribas v. American Home*, 165 DPR 598,

---

[3] *Íd.*, a las págs. 285-287.
[4] La legislación y jurisprudencia federal sobre marcas es en extremo persuasiva para la resolución de controversias de esta naturaleza. *Federation des Ind. v. Ebel*, 172 DPR 615, 626 (2007); *Posadas de P.R. v. Sands Hotel*, 131 DPR 21, 35 (1992). A su vez, la Exposición de Motivos de la Ley 169 consigna que la misma integra elementos de diversas leyes federales sobre ese tema. Véase Exposición de Motivos de la Ley 169-2009 (2009 LPR 1447) (Parte 2).

605 (2005); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 US 189, 198 (1985)).

El Artículo 2 de la Ley 169, 10 LPRA sec. 223(f), define una marca como "[t]odo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, al igual que de productos o servicios de otra persona. El término incluye cualquier marca de fábrica, marca de servicio, marca de certificación y marca colectiva". Así pues, una marca "constituye todo elemento distintivo que permita diferenciar un producto o servicios de otras en el mercado". *Bedrosian Heres*, 205 DPR a la pág. 1130.

En lo atinente al caso de autos, el Artículo 2 de la Ley 169, 10 LPRA sec. 223(h), define una marca de servicio como sigue:

> Cualquier palabra, nombre, símbolo, imagen o estilo comercial (*trade dress*), medio, logo, diseño, color, sonido, olor, forma, objeto o una combinación de éstos que:
> (1) Es utilizada por una persona en el comercio o
> (2) una persona tiene la intención bona fide de utilizar en el comercio y solicita registro para la misma; y que sirva para identificar y distinguir los servicios de una persona de los servicios de otra y para indicar la fuente de los servicios, aunque no sea conocida.

La marca de servicio caracteriza y distingue los servicios que ofrece una persona de los servicios que ofrece otra. *Bedrosian Heres*, 205 DPR a la pág. 1131. "Esta categoría de marca no identifica objetos tangibles, sino una acción o un producto inmaterial que realiza el proveedor para satisfacer una demanda". *Íd.* (citando a *Posadas de P.R. v. Sands Hotel*, 131 DPR a la pág. 33). Al igual que las otras clases de marcas, mediante la marca de servicio se orienta al consumidor sobre el origen de éste, aunque no sea de renombre. *Íd.* (citando el Art. 2(h) de la Ley 169, 10 LPRA sec. 223(h)). "La distinción entre estas marcas estriba entonces en el tipo de actividad que pretenden distinguir". *Íd.*

III.

De acuerdo con el Artículo 3 de la Ley 169, 10 LPRA sec. 223a, el derecho sobre determinada marca se adquiere mediante su uso en el comercio o por medio de su inscripción en el Registro de Marcas del Departamento de Estado fundamentado en la intención "bona fide de utilizar la marca en el comercio". Con relación a un servicio, se considera que una marca en el comercio de Puerto Rico está en uso legal de buena fe "cuando la marca es usada o desplegada en la venta o promoción de los servicios; y los servicios se llevan a cabo en Puerto Rico". Art. 1(s)(2) de la Ley 169, 10 LPRA sec. 223(s)(2).

De lo anterior se desprende el criterio rector en nuestra jurisdicción para que una marca adquiera protección jurídica: su uso en determinado mercado en conexión con el producto o servicio. *Bedrosian Heres*, 205 DPR a la pág. 1131 (citando a *Colgate-Palmolive v. Mistolín*, 117 DPR 313, 325 (1986)). La "falta de inscripción de una marca no es óbice para que se le reconozcan derechos propietarios a la persona natural o jurídica que la haya impulsado". *Bedrosian Heres*, 205 DPR a las págs. 1131-1132. Así pues, "la mera inscripción de la marca podría ceder ante el reclamo de un usuario que demuestre que la empleó con anterioridad, pues éste tiene mejor derecho sobre ella". *Íd.*, a la pág. 1132 (citando *Arribas*, 165 DPR a la pág. 605). Claro está, "el Certificado de Registro expedido por el Secretario de Estado será "evidencia prima facie de la validez de la marca". *Íd.* (citando el Art. 12 de la Ley 169-2009, 10 LPRA sec. 223j). Asimismo, el primer usuario de una marca no puede excluir el uso posterior de dicha marca por parte de otros usuarios en áreas en donde actualmente no hace negocios o donde no es probable que lo realice en un futuro. *Posadas de P.R.*, 131 DPR a la pág. 36. Tampoco se puede reclamar este derecho si

ha dejado de utilizar, o ha abandonado, la marca **o si esta última no crea una probabilidad de confusión al consumidor**. *Íd.*

Por otro lado, se han reconocido cuatro (4) tipos de marcas, a saber: genéricas, descriptivas, sugestivas y arbitrarias o imaginables. *Bedrosian Heres, supra*; *Federation des Ind. v. Ebel*, 172 DPR 615, 624 (2007); *Posadas de P.R.*, 131 DPR a la pág. 37. Las primeras dos categorías, genéricas y descriptivas, no son registrables. *Íd*; véase, además, Artículo 5 de la Ley 169, sec. 223c. Una marca se denomina como genérica cuando "se reconoce como el nombre común de una clase, de un género, y no de un producto o servicio proveniente de una fuente determinada". *Bedrosian Heres*, 205 DPR a la pág. 1134 (citando *Colón v. Carlos Martínez, Inc.*, 112 DPR 846, 850 (1982)); véase, además, *United States Patent and Trademark Office v. Booking.com B.V.*, 591 US ____ (2020), 140 S. Ct. 2298, 2304-2309 (2020).

Por su parte, una marca es descriptiva "cuando meramente imparte información al público consumidor sobre algún ingrediente o característica del artículo o servicio, tales como el color, olor, función, dimensiones y la calidad de éste. *Bedrosian Heres*, 205 DPR a la pág. 1133 (citando *Colgate-Palmolive*, 117 DPR a la pág. 326 y 87 C.J.S. *Trademarks, Trade Names, and Unfair Competition* Sec. 52 (2020)). Sin embargo, las marcas descriptivas pueden registrarse y lograr protección jurídica, siempre que adquieran significación secundaria. *Íd.*, a la pág. 1132. La significación secundaria se logra cuando el reconocimiento de parte del consumidor es tal que este "asocia la marca directamente con el productor u origen del producto o servicio como fuente única de este". *Íd.* (citando *Cooperativa Cafeteros v. Colón Colón*, 91 DPR 372, 386–387 (1964); *Kellogg Co. v. Nat. Biscuit Co.*, 305 US 111, 118 (1938); 2 McCarthy on Trademarks and Unfair Competition 5th Sec. 15:5 (2020); *Park 'N Fly, Inc.*, 469 US a la pág. 194).

Por otro lado, "las marcas sugestivas, arbitrarias o imaginables tienden a identificar fácilmente la procedencia del producto o servicio por lo que gozan de ser inherentemente distintivas y, por ende, acreedoras de protección según el derecho marcario". *Bedrosian Heres*, 205 DPR a las págs. 1132-1133 (citando *Posadas de P.R.*, 131 DPR a las págs. 37–39); véase, además, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763 (1992). Una marca arbitraria o imaginable no está relacionada con las cualidades del producto o el servicio que identifica. *Íd.*, a la pág. 1133. Se refiere a las marcas que "surgen de palabras inventadas por los comerciantes, precisamente con el propósito de lograr distintividad, o aquellas que consisten en palabras ordinarias que no están vinculadas con el producto o servicio". *Bedrosian Heres*, 205 DPR a la pág. 1133 (citando a *Colgate-Palmolive*, 117 DPR a la pág. 326); véase, además, *Federation des Indes*, 172 DPR a la pág. 625.

El titular registral o dueño de una marca tiene varios mecanismos para protegerla. El Artículo 26 de la Ley 169, 10 LPRA sec. 223w, establece los remedios disponibles por violaciones al derecho marcario:

> Cualquier persona que, sin el consentimiento del titular registral o del dueño de una marca, reproduzca, falsifique, copie, imite, use o intente usar una marca igual o similar a una marca registrada bajo este capítulo, o que se usa en el comercio de Puerto Rico con anterioridad al uso por parte de tal persona, que pueda causar probabilidad de confusión o engaño en cuanto al origen de los bienes o servicios o en cuanto a endoso o asociación, será responsable en una acción civil al titular registral, o al dueño, y/o a la persona con autorización por escrito de parte del dueño de la marca, y cualquiera de los cuales podrá presentar una demanda contra tal persona y solicitar un interdicto, orden de incautación, daños y/o cualquier otro remedio que en derecho proceda.

El titular registral puede obtener órdenes provisionales *ex parte* que decreten el cese del uso de una marca hasta que se ventile el caso y órdenes *ex parte,* sin previo pago de fianza, para el embargo

preventivo e incautación de los artículos a los que el infractor hubiese adherido la marca. 10 LPRA sec. 224. Debido a su naturaleza, el *injunction* estatutario requiere un tratamiento especial, enmarcado dentro de un examen o escrutinio judicial menos riguroso que el *injunction* tradicional. *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 497 (2014); véase, además, *CBS Outdoor v. Billboard One, Inc.*, 179 DPR 391, 409 (2010).

IV.

Para prevalecer en una solicitud de *injunction* por infracción de marca de fábrica o servicio, la parte reclamante debe demostrar que: 1) el nombre de determinado producto o servicio sobre el cual desea la exclusividad es protegible o está sujeto a ser apropiado; 2) fue quien primero lo utilizó en conexión con su producto o servicio en Puerto Rico; 3) existe una probabilidad de confusión al consumidor entre su marca y la del demandado; y 4) que dicha probabilidad de confusión le causa un daño irreparable para el cual no posee otro remedio adecuado en ley. *Bedrosian Heres*, 205 DPR a la pág. 1137 (citando a *Posadas de P.R.*, 131 DPR a la pág. 37).

La determinación en torno a la existencia de una probabilidad de confusión entre marcas depende de una evaluación de las circunstancias de cada caso. *Íd*. Algunos elementos que el tribunal debe considerar son: (1) la similitud entre las marcas; (2) la similitud entre los productos o servicios; (3) la fuerza de la marca o su distintivo; (4) la intención del segundo usuario al adoptar la marca, y (5) la evidencia de confusión actual o real. *Íd*. (citando *Posadas de P.R.*, 131 DPR a la pág. 45). La probabilidad de confusión se considera en atención al criterio de un "comprador prudente y razonable" que adquiere un bien o servicio determinado bajo la creencia de que está comprando otro. Véase, *Bedrosian Heres*, 205 DPR a la pág. 1135.

La "fuerza" de una marca depende de su distintivo o de su tendencia de identificar los productos o servicios ofrecidos como pertenecientes a, o provenientes de, una fuente en particular.  Por consiguiente, la evidencia de que la marca es extensamente utilizada por terceros en la misma industria es altamente relevante para demostrar la "debilidad" de una marca o su falta de distintivo.  Mientras más "débil" sea la marca, menos probable es la confusión.  *Posadas de P.R.,* 131 DPR a las págs. 45-46 (citando *Sun Banks of Fla. v. Sun Fed. Sav. & Loan,* 651 F.2d 311, 315 (5to Cir. 1981)).  La marca "fuerte" tiene un mayor alcance de protección, mientras que la protección de una marca "débil" se limita a evitar que productos o servicios estrechamente relacionados utilicen marcas similares.  *Íd.*, a la pág. 46.

Por otro lado, para que se demuestre que existe una probabilidad de confusión, es necesario que exista una similitud de las marcas.  No obstante, este factor, por sí solo, no ocasiona la confusión.  El grado de similitud entre las marcas se determina comparando la totalidad de ambas marcas.  *Posadas de P.R.,* 131 DPR a la pág. 47; *Cooperativa Cafeteros,* 91 DPR a la pág. 395.  Estas no tienen que ser idénticas para que se configure una infracción de marca; basta que la parte sustancial o dominante de la marca sea imitada o copiada.  *Íd.* (citando *Jordan K. Rand, Ltd. v. Lazoff Bros. Inc.,* 537 F. Supp. 587, 595 (1982); *Gilbert/Robinson v. Carrie Beverage-Missouri,* 758 F.Supp. 512, 523 (E.D. Mo. 1991)).

Asimismo, resulta necesario considerar la proximidad del mercado y territorio a los que van dirigidos los dos productos o servicios.  Los productos o servicios, así como sus mercados, no tienen que ser idénticos, pero sí lo suficientemente similares como para hacer creer al público que ambos tienen un origen o afiliación común.  *Posadas de P.R.,* 131 DPR a la pág. 48.

Otro elemento pertinente en este análisis es la intención de un segundo usuario en adoptar una marca; es decir, si hubo el propósito de engañar al público para obtener beneficio de la reputación de su competidor. No obstante, este factor pierde importancia si otros hechos demuestran que no hay tal confusión. *Íd.*, a la pág. 49. Además, la evidencia de confusión real no es necesaria para demostrar imitación de marcas, aunque constituiría la mejor evidencia para demostrar la existencia de probabilidad de confusión. *Íd.* (citando *American Intern. Group v. American Intern. Bank*, 926 F.2d 829, 832 (9no Cir. 1991); *Sun-Fun Products v. Suntan Research & Development*, 656 F.2d 186, 191 (5to Cir. 1981)).

V.

Concluimos que procede la confirmación de la Sentencia, pues la prueba no demostró probabilidad de confusión en cuanto al origen de los servicios ofrecidos por cada una de las partes, ello a la luz de los factores pertinentes, arriba señalados.

Primero, en cuanto a la similitud entre las marcas, es innegable que ambas partes usan, y registraron, la palabra "sazón". Ahora bien, los diseños de los logotipos que utilizan las partes son marcadamente distintos. Más importante aún, el Negocio de Ponce utiliza la palabra sazón de forma sustancialmente distinta en cada uno de sus restaurantes, en términos del logotipo, lo cual le resta distintividad.[5] Por su parte, las Corporaciones de San Juan utilizan siempre un mismo logotipo, el cual, a su vez, es fácilmente distinguible de los logotipos utilizados por el Negocio de Ponce.[6] La inconsistencia del Negocio de Ponce en la forma de utilizar la palabra sazón, junto a la forma distinta en que el Negocio de San Juan lo

---

[5] Véase, fotos del logo utilizado por la corporación de Ponce, Prueba admitida en evidencia apelante, Apéndice 22, págs. 310, 317-320, 326, 349-360, 363, 383-386.

[6] Véase, logo del restaurante de San Juan, Prueba admitida en evidencia apelante, Apéndice 22, pág. 311.

utiliza, reduce la probabilidad de confusión en un comprador prudente y razonable.

Además, el hecho de que ambas partes añaden palabras al nombre de sus restaurantes reduce la probabilidad de confusión. En efecto, tanto el Negocio de Ponce como las Corporaciones de San Juan operan sus establecimientos comerciales con palabras adicionales a la palabra "sazón" para identificarlos. Las Corporaciones de San Juan operan un restaurante denominado "Sazón Cocina Criolla". Por su parte, el Negocio de Ponce opera tres (3) restaurantes con designaciones distintas. A pesar de que la Sa. Gina Del Prado, codueña y vicepresidenta del Negocio de Ponce (la "Oficial de Ponce"), insistió en que todos sus restaurantes tienen únicamente por nombre "Sazón", del récord se desprenden las siguientes frases para identificar los restaurantes: "Sazón Monte Plaza", "Sazón Criollo Taquería Bar" y "La Fonda Sazón".[7]

Segundo, en cuanto a la semejanza de servicios, en este caso no estamos ante un factor que abone fuertemente en una u otra dirección. Por un lado, ambas partes operan restaurantes de comida criolla puertorriqueña, por lo que hay cierta similitud en su oferta gastronómica. No obstante, por otro lado, al examinar el asunto con mayor detalle, se constató que hay marcadas y sustanciales diferencias en el estilo, ambientación y tipo de oferta de cada parte. Veamos.

Por ejemplo, el menú del Negocio de San Juan tiene énfasis en pescados y mariscos; no así los que opera el Negocio de Ponce.[8] El restaurante "Sazón Monte Plaza", además de comida criolla, ofrece "brunch", hamburguesas, "sliders", pasta carbonara con

---

[7] Transcripción de la prueba (TPO), pág. 698, líneas 1-5. A pesar de que negó que sus restaurantes tengan otro nombre que no sea "Sazón", TPO, págs. 833-836, lo cierto es que, como veremos en detalle más adelante, surge lo contrario de las fotos de los restaurantes, las páginas en las redes sociales y el menú de los restaurantes.

[8] Véase, *Menú de Sazón Cocina Criolla*, Prueba admitida en evidencia apelante, Apéndice 22, pág. 387.

diferentes acompañantes y quesadillas.[9] Por su parte, "Sazón Criollo Taquería Bar" incluye, además de comida criolla, platos mexicanos.[10] "La Fonda Sazón" tiene un menú regular diario a escoger una de cuatro (4) proteínas con dos (2) acompañantes, de una oferta de siete (7), más un especial del día.[11]

Los restaurantes de las partes también tienen diferencias sustanciales en cuanto a precio y ambientación. Los restaurantes que opera el Negocio de Ponce tienen una decoración sencilla[12], mientras que el Negocio de San Juan tiene una fachada y decoración más elaborada, la cual es fácilmente distinguible de la utilizada por los restaurantes operados por el Negocio de Ponce.[13] Asimismo, los precios del Negocio de San Juan son sustancialmente más altos que los de los restaurantes operados por el Negocio de Ponce.[14]

Tercero, en cuanto a la fuerza de la marca, este importante factor inclina sustancialmente la balanza hacia la inexistencia de alguna probabilidad de confusión. Recordemos que, mientras más extenso el uso de una marca por terceros, más débil es la misma y, mientras mayor la fuerza de una marca, mayor será el grado de protección a ofrecerse a la marca sobre otras.

La prueba en este caso demostró que "sazón" es una marca sumamente débil. Se presentó prueba sobre el uso común de la palabra "sazón" en la industria de la venta de alimentos dentro y fuera de Puerto Rico. Además de presentarse evidencia de

---

[9] Véase, *Menú de Sazón Monte Plaza*, Prueba admitida en evidencia apelante, Apéndice 22, págs. 384-385.

[10] Véase, *Menú de Sazón Criollo Taquería Ba*r, Prueba admitida en evidencia apelante, Apéndice 22, pág. 383.

[11] Véase, *Menú de La Fonda*, Prueba admitida en evidencia apelante, Apéndice 22, pág. 386.

[12] Véanse, fotos de los restaurantes de la corporación de Ponce, Prueba admitida en evidencia apelante, Apéndice 22, págs. 317-321, 335, 366-370, 371.

[13] Véanse, *Abre hoy Sazón Cocina Criolla, tercer restaurant en el Distrito T-Mobile*; y fotos del restaurante de la corporación de San Juan Prueba admitida en evidencia apelante, Apéndice 22, págs. 394 y 492-494 respectivamente; *Deslumbra el Sazón Criollo y el Arte Local en Distrito T-Mobile*, Amarie Magazine y *Deslumbra el Sazón Criollo en el Distrito T-Mobile*, Sabrosía, Prueba admitida en evidencia apeladas, Apéndice 23, págs. 508-515 y 545-547.

[14] Véase, *Menú de Sazón Cocina Criolla*, Prueba admitida en evidencia apelante, Apéndice 22, pág. 387.

restaurantes en ciudades prominentes de otros países, se demostró que, de una búsqueda en internet, surgen casi veinte (20) restaurantes, fondas, cafeterías, lechonera y hasta un camión de comida (*food truck*) que utilizan la palabra "sazón" en sus nombres, en Puerto Rico, para la venta de alimentos.[15] Precisamente por su debilidad para distinguir el origen particular de un servicio es que dichos negocios se ven obligados a añadir palabras o frases a la palabra "sazón" para describir e intentar distinguir adecuadamente el servicio ofrecido. En el caso del Negocio de Ponce, se usan las palabras "Fonda", "Criollo Taquería Bar" y "Monte Plaza" para identificar cada uno de sus restaurantes. Las Corporaciones de San Juan utilizan "Cocina Criolla", y la ubicación de su restaurante en el Distrito T-Mobile, para distinguir su restaurante.

Cuarto, en cuanto a la intención del segundo usuario de la marca, este factor también favorece a las Corporaciones de San Juan, pues se probó, de forma incontrovertida, que no hubo la intención de engañar al público u obtener algún beneficio de la reputación de los restaurantes operados por el Negocio de Ponce. En efecto, se demostró que las Corporaciones de San Juan verificaron en el Registro de Marcas si la marca "sazón" estaba registrada y, al hacerlo el 17 de diciembre de 2019, la marca no estaba registrada.[16] A su vez, no advinieron en conocimiento de la existencia de la marca del Negocio de Ponce hasta que este le cursó la carta de cese y desista en mayo de 2021.[17] Por su parte, el Negocio de Ponce no registró la palabra "sazón" sino hasta marzo de 2021, luego de conocer que era inminente que las Corporaciones de San Juan abrieran un restaurante de nombre "Sazón Cocina Criolla" en el Distrito T-Mobile. En fin, del récord no surge prueba alguna que

---

[15] Véase, copias de capturas de pantalla de *Google Maps*, Prueba admitida en evidencia apeladas, Apéndice 23, págs. 460-474.
[16] TPO, pág. 983, líneas 2-11- pág. 985, líneas 7-15.
[17] TPO, pág. 908, líneas 3-11.

sustente que las Corporaciones de San Juan hubiesen tenido el propósito de engañar a los consumidores y gozar del beneficio de la reputación del Negocio de Ponce.

Finalmente, en cuanto a confusión real, un examen de la prueba al respecto revela un puñado de incidentes específicos, junto a aseveraciones genéricas que fallan en demostrar que exista una verdadera probabilidad de confusión en Puerto Rico en cuanto al origen del servicio ofrecido por los restaurantes de las partes. Veamos.

El Negocio de Ponce presentó el testimonio del Sr. Carlos Miranda Basch (el "Vecino de Ponce"), agente de seguros y residente en Ponce. Relató que, el 17 de diciembre de 2021, cenó en el Negocio de San Juan, mientras se hospedaba en un hotel de San Juan, porque reconoció el nombre "Sazón" debido a que en Ponce hay un negocio así y quiso patrocinarlo.[18]

Por su parte, la Oficial de Ponce declaró que recibía muchas llamadas, que han aumentado en frecuencia, de clientes que quieren hacer reservaciones, pero para el restaurante del Distrito T-Mobile.[19] Además, afirmó que un comensal del Negocio de San Juan hizo un "check in" en la página de Instagram de uno de sus restaurantes.[20] Es decir, a pesar de que la foto fue tomada en el Negocio de San Juan, la foto se subió a la página de *Instagram* de uno de los restaurantes de Ponce. También expresó que una persona tomó una foto de uno de sus platos y la "subió" a *Instagram* con la etiqueta del Negocio de San Juan.[21] También, una foto de uno de los restaurantes operados por el Negocio de Ponce aparece bajo la etiqueta del Negocio de San Juan.[22] El Negocio de Ponce también presentó evidencia escrita de una persona quien, en

---

[18] TPO, pág. 943, líneas 8-10.
[19] TPO, pág. 830, líneas 1-21.
[20] TPO, pág. 823, líneas 3-9.
[21] TPO pág. 824, líneas 23-25 y pág. 825, líneas 1-14.
[22] TPO pág. 826, líneas 15-24.

conexión con una noticia sobre la apertura del Negocio de San Juan, preguntó si eran los mismos de Ponce y una aseveración en cuanto a que estos eran una "porquería".[23]

Como puede apreciarse, el número de incidentes de verdadera confusión es escaso, y el testimonio en cuanto a un supuesto "aumento" en la confusión en las fotos de *Instagram* y en las llamadas recibidas por el Negocio de Ponce, para hacer reservaciones en el Negocio de San Juan, resulta muy genérico y carece de suficientes detalles que nos permitan concluir que es real y sustancial la probabilidad de confusión.

En fin, analizados en conjunto los anteriores factores, bajo el crisol de un comprador prudente y razonable, concluimos, al igual que lo hizo el TPI, que Negocio de Ponce no logró demostrar la existencia de una probabilidad de confusión, a diferencia de una mera posibilidad. A la luz de la debilidad de la marca, la distancia entre los restaurantes, y las diferencias entre sus ofrecimientos y ambientación, no podemos concluir que exista probabilidad de confusión, ello a pesar de los incidentes de confusión real sobre los que se pasó prueba. Puesto de otro modo, examinadas las marcas en su totalidad, la variación que las partes le confieren a sus restaurantes es suficiente como para permitir que los consumidores distingan los servicios que ofrece cada una. Adviértase, además que la utilización de una marca "débil" admite cierto grado de confusión, por lo cual la parte que decide utilizar una marca débil asume el riesgo de que ocurra alguna confusión.[24]

---

[23] Véase, *Distrito T-Mobile integra nuevo restaurante de comida criolla al complejo de entretenimiento*, Prueba admitida en evidencia apelante, Apéndice 22, pág. 426.

[24] A modo persuasivo, al comentar sobre el uso justo (*fair use*) de una marca, así se expresó la Corte Suprema federal en *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 US 111, (2004):

> **The common law's tolerance of a certain degree of confusion** on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, **not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first**. *Canal Co. v. Clark, 13 Wall.*, at 323–324, 327. **The Lanham Act adopts a similar leniency**, there being no indication that the statute was meant to

## VI.

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

deprive commercial speakers of the ordinary utility of descriptive words. "**If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well-known descriptive phrase**." *Cosmetically Sealed Industries, Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d, at 30. See also *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201, 105 S. Ct. 658, 83 L.Ed.2d 582 (1985) (noting safeguards in Lanham Act to prevent commercial monopolization of language); *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (C.A.2 1995) (noting importance of "protect[ing] the right of society at large to use words or images in their primary descriptive sense"). (Notas al calce en el original suprimidas). (Énfasis nuestro).